UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ESTELA HUBERT MCDONALD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-2691-B |
| | § | |
| DEUTSCHE BANK NATIONAL TRUST | § | |
| COMPANY, AS TRUSTEE FOR THE | § | |
| CERTIFICATE HOLDERS OF THE | § | |
| MORGAN STANLEY ABS CAPITAL 1 | § | |
| INC. TRUST PASS-THROUGH | § | |
| CERTIFICATES, SERIES 2005-HE2, | § | |
| BANK OF AMERICA, NA and | § | |
| BAC HOME LOANS SERVICING, LP, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss, filed November 21, 2011 (doc. 11). For the reasons listed below, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**.

I.

BACKGROUND

This lawsuit arises out of the foreclosure of real property. In September 2004, Plaintiff McDonald purchased property located at 1504 Vida Court, Dallas County, Texas ("the Property"). Am. Compl. ("Compl.") ¶¶ 7, 9. To finance the purchase, McDonald executed a note payable ("Note") to Accredited Home Lenders, Inc. ("AHL"). *Id.* ¶ 9. To secure payment of the Note, McDonald executed a Deed of Trust naming MERS as the nominee for AHL and its successors and

- 1 -

assigns. *Id.* MERS then assigned the Deed of Trust to Deutsche Bank ("Deutsche"). *Id.* Bank of America ("BOA")[1] acts as a servicer for Deutsche. Mot. to Dismiss ¶ 6.

In March 2007, McDonald's spouse lost his job and thus her income was reduced. *Id.* ¶ 10. In February 2010, McDonald called BOA with questions about its loan modification program. *Id.* In March 2010, McDonald applied for a load modification under the Home Affordable Modification Program ("HAMP"). *Id.* After McDonald sent in requested financial information, BOA responded in June 2010 by increasing McDonald's monthly payment from $721.35 to $1071.64, and by opening an escrow account. *Id.* ¶ 11. After McDonald called BOA in July 2010 to inquire about the increased payment amount, she was told to continue to pay $721.35 per month until her application for loan modification was reviewed. *Id.* At that time, McDonald resubmitted her loan application materials. *Id.*

In December 2010, McDonald called BOA to inquire about the status of her application, and was again asked to re-send her materials. *Id.* ¶ 12. McDonald then received a letter dated December 24, 2010, wherein BOA advised her that it needed additional documents but that "no foreclosure sale will be conducted and you will not lose your home during the [HAMP] evaluation." *Id.* ¶ 13. After having sent the requested documents, McDonald received another letter dated January 28, 2011, that repeated the demand for additional documents and reiterated that no foreclosure sale would be conducted until after the HAMP valuation was completed. *Id.* On February 18, 2011, McDonald received a latter from BOA indicating that her application for a loan modification had

---

[1] Bank of America merged with BAC Home Loans Servicing, L.P., its servicing arm and wholly owned subsidiary in 2011. For purposes of this Motion, the Court will make no distinction between the parties and will refer to both as Bank of America ("BOA").

been denied, but that it would review her information to evaluate if other options would be available to her. *Id.* ¶ 14.

Ten days later, McDonald received a letter from BOA indicating that she was in default and had to pay $4,255.43. *Id.* ¶ 15. On March 2, 2011, McDonald received a phone call from the BOA collection department stating that she owed a balance of $4,605.7 and that her property would be foreclosed. *Id.* McDonald continued to call and asked to speak with BOA representatives. *Id.* ¶¶ 16-18. On March 23, 2011, McDonald spoke with a representative who recommended that she pay the increased monthly amount, including the escrow payment. *Id.* ¶ 18. Then, on March 30, 2011, McDonald again spoke with a BOA representative who instructed her to resubmit her loan modification documents. *Id.* ¶ 19. McDonald received a statement dated April 28, 2011, indicating that her past due payment was $6,429.94. *Id.* Defendants then posted the Property for foreclosure on October 4, 2011. *Id.* ¶ 20.

McDonald filed this lawsuit against Defendants on September 29, 2011, in Dallas County, Texas, which Defendants subsequently removed to this court. Notice of Removal ¶¶ 2-8. On November 8, 2011, McDonald filed an Amended Complaint that features seven separate causes of action: (1) breach of contract and anticipatory breach of contract; (2) breach of tort of unreasonable collection efforts; (3) malice; (4) violation of Texas Consumer Credit Code and Debt Collection Practices Act; (5) accounting; (6) negligent misrepresentation; and (7) declaratory judgment. Compl. ¶¶ 22-53. McDonald claims, in short, that Defendants wrongfully created an escrow account, offered misleading information, and increased her monthly payments.

Defendants filed this Motion to Dismiss on November 21, 2011. Defendants contend that each of these causes of action must be dismissed as a matter of law. After McDonald filed a response,

they elected not to file a reply brief. The Court will now address the merits of the Motion below.

## II.

## LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff may support his claim for relief with any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In analyzing a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Such a motion should only be granted when the complaint does not include "enough facts to state a clam to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, to survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadilac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Nevertheless, it is well established that dismissal under Fed. R. Civ. P. 12(b)(6) is warranted where an affirmative defense, such as the statute of limitations, is apparent on the face of the plaintiff's complaint. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir.2003); *Kansa Reinsurance Co. v. Congressional Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir.1994).

## III.

## ANALYSIS

Defendants argue that each of Plaintiff's claims must be dismissed as a matter of law because they acted in accordance with the terms of the Deed of Trust. Furthermore, Defendants argue that McDonald cannot plead any set of facts that would give rise to relief for her tort claims because she is barred by the statute of frauds and other common law limitations that preclude relief. McDonald argues in response that each of its claims is cognizable and should survive Defendant's Motion. The Court will address each of McDonald's causes of action below.

A. *Breach of Contract and Anticipatory Breach of Contract*

Defendants contend that McDonald's claim for breach of contract must be dismissed as a matter of law as a result of seven separate theories. McDonald argues, in response, that she has stated a plausible claim, and that many of Defendants theories depend on evidence that has not surfaced at this state of litigation. Under Texas law, "the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as

a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)). In order to prevail on a claim for anticipatory breach, a plaintiff must establish "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004). McDonald's claims rely primarily on her allegations that (1) Deutsche Bank was not a holder or owner of the Note, and therefore cannot enforce it; and (2) that customer representatives repeatedly informed McDonald that she was not responsible for paying the monthly fees after they had been raised.

Under Texas law, a deed of trust is a mortgage with a power to sell on default. *DeFranceschi v. Wells Fargo Bank N.A.*, No. 4-10-cv-455-Y, 2011 WL 3875338, at *4 (N.D. Tex. Aug. 31, 2011) (citations omitted). The mortgage created by a deed of trust "is an interest created by a written instrument providing security for payment." *Id.* That security is established by a note. *Id.* Because the deed of trust has no legal effect apart from the debt, a transfer of the deed of trust automatically transfers the debt. *Id.* (citing *Teas v. Republic Nat'l Bank*, 460 S.W.2d 233, 243 (Tex. Civ. App.-1970, writ ref'd n.r.e.)). In this case, the Note at issue explicitly provides that the lender may enforce the Deed of Trust:

> In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated the same date as this Note, protects the Note Holder from possible losses which might result if [Plaintiff] do[es] not keep the promises which [Plaintiff] make[s] in this Note. That Security Instrument describes how and under what conditions [Plaintiff] may be required to make immediate payment in full of all amounts [Plaintiff] owe[s] under this Note.

Def.'s App. 2, ¶ 11. The language of the Note, then, leaves no doubt that the holder of the Note has the power to sell the Property on default.

Under the Texas Property Code, a mortgagee may authorize a mortgage servicer to service a mortgage and conduct a foreclosure sale. *See* TEX. PROP. CODE ANN. § 51.0025 (West 2007). The Deed of Trust identifies MERS as the beneficiary and the nominee for the original lender and its successors and assigns. Defs.' App. 7. Thus, under the Texas Property Code, MERS is a mortgagee. *See* TEX. PROP. CODE ANN. § 51.0001(4) (West 2007). As a mortgagee, then, MERS has the authority to transfer the right to foreclose to a loan servicer, such as Deutsche, without producing the original Note or Deed of Trust. *See Sawyer v. Mortg. Elec. Registration Sys., Inc.*, No. 3–09–CV–2303–K, 2010 WL 996768, at *3 (N.D. Tex. Feb.1, 2010).

In her Response, McDonald argues that Deutsche was never a holder or owner of the Note, and consequently cannot enforce it. Pl.'s Resp. 9. McDonald alleges that she executed a Note payable to AHL, but that the Note makes no reference to MERS. Therefore, according to McDonald, because MERS was not a holder or owner of the Note, it had not authority to transfer the Note to Deutsche. Pl.'s Resp. 7. This theory has been roundly rejected by district courts in the Fifth Circuit. *See, e.g., Malikyar v. BAC Home Loans Servicing, LP*, No. 4:11–CV–417, 2011 WL 5837262, at *5 (E.D. Tex. Oct. 28, 2011); *Wiggington v. Bank of N.Y. Mellon*, No. 3:10–CV–2128–G, 2011 WL 2669071, at *3 (N.D. Tex. Jul.7, 2011); *DeFranceschi v. Wells Fargo Bank N.A.*, No. 4-10-cv-455-Y, 2011 WL 3875338, at *4 (N.D. Tex. Aug. 31, 2011). "In other words, a transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions." *DeFranchesci*, 2011 WL 3875338, at *4. Therefore, when MERS assigned the Deed of Trust to Deutsche Bank, it also assigned its power of sale. *Id.*[2]

---

[2] Defendants also note correctly that McDonald lacks standing MERS' assignment of the Deed of Trust because she was not a party to the assignment. *See Eskridge v. Fed. Home Loan Mrtg. Corp.*, N. W-10-

- 7 -

McDonald further argues that Defendants waived their right to foreclose when it informed her that she should continue to pay her original note payment while her loan modification was pending. McDonald claims to have relied on this promise, which she argues constitutes a unilateral contract that Defendants breached when it posted her property for foreclosure. Compl. ¶ 26.

Under Texas law, a "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). To prove waiver, a party must show "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* Where waiver is based on inference, "it is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party [unequivocally manifested] its intent to no longer assert its claim." *G.H. Bass & Company v. Dalsan Properties–Abilene*, 885 S.W.2d 572, 577 (Tex.App.-Dallas 1994, no writ).

McDonald argues that Defendants waived any breach of contract when it instructed her to make the $721.35 monthly payments rather than the increased amount. McDonald also claims that Defendants acted inequitably and inconsistently when it informed her to continue to apply for a loan modification, and that her house would not be foreclosed during that time. However, in making these allegations, McDonald relies primarily on oral representations made by BOA representatives via telephone, which fail to comply with the statute of frauds. The Texas statute of frauds requires that "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in

---

CA-285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011).

value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COM. CODE ANN. § 26.02(b). Furthermore, "both Texas state and federal courts have concluded that, generally, both the original loan and any alleged agreement to modify the original loan are governed by section 26.02 and must be in writing." *See Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *6 (N.D. Tex. May 30, 2012) (Boyle, J.) (quoting *Montalvo v. Bank of Am. Corp.*, No. SA–10–CV–360–XR, 2012 WL 1078093, at *13 (W.D. Tex. March 30, 2012)); *see also Homer v. Bourland*, 624 F.2d 1142, 1148 (5th Cir. 1984) (noting that material modifications to a contract must be in writing). Any statements made by customer service representatives, then, cannot be offered to illustrate Defendants' intent to relinquish their right to collect a higher loan payment or to accelerate and foreclose under the contract. Additionally, the Deed of Trust specifically states that "any forbearance by Lender in exercising any rights or remedy, including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy." Def.'s App. 12, ¶ 12. Given that the terms of the Deed of Trust preserve the right to enforce the debt, McDonald cannot demonstrate that Defendants have expressed an unequivocal intent to relinquish that right.

McDonald further argues that the doctrine of promissory estoppel applies to Defendants' statute of frauds defense. Under Texas law, when pleading the defense of promissory estoppel, a plaintiff must establish the following: (1) a promise; (2) reliance thereon that was foreseeable to promissor; and (3) substantial reliance by promisee to her detriment. *Lozada v. Farrall & Blackwell Agency, Inc.*, 323 S.W.3d 278, 291 (Tex. App-El Paso 2010, no pet.). Loan agreements, under Texas law, include any agreement to delay repayment or to make financial accommodation. *See Miller v.*

*BAC Home Loans Servicing LP*, No. 6:11-CV-22, 2012 WL 1206510, at *6 (E.D. Tex. Mar. 23, 2012). Furthermore, when seeking to circumvent the statute of frauds, a plaintiff must plead that the "'promise promised to sign a written document complying with the statute of frauds' to create an exception." *Id.* (quoting *Ford v. City Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App.-Corpus Christi 2001, no pet.)). Though McDonald has alleged that a number of customer representatives assured her that it would not foreclose her property while her loan modification was under review, she has not alleged that Defendants promised to execute a written document incorporating the alleged agreement. Accordingly, McDonald has failed to state a plausible claim for relief under the doctrine of promissory estoppel.

McDonald's contention that Defendants have breached an implied duty of good faith and fair dealing must also fail. Defendants rely primarily on the UCC, but as courts have noted, "because the Deed of Trust places a lien on real property, it is not governed by the UCC." *Id.* (quoting *Water Dynamics, Ltd. v. HSBC Bank USA Nat'l Ass'n*, No. 4:11–CV–614–A, 2012 WL 34252, at *6 (N.D. Tex. Jan. 6, 2012)); *see also Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App.-San Antonio 1998, no pet.). Furthermore, Texas law does not impose a duty of good faith and fair dealing on either the relationship of mortgagor and mortgagee or the relationship of creditor and debtor. *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 709 (Tex 1990). McDonald has also failed to allege any kind of special relationship with Defendants that could, in theory, give rise to this duty. *Id.*

McDonald finally argues that BOA was not authorized to disburse funds from her escrow account. In her Complaint, McDonald alleges that before she had ever missed a payment on her mortgage, "BAC wrongfully paid her insurance . . . created an escrow account without [her] consent

and then increased [her] monthly payments." Compl. ¶ 26. Both parties agree that the Deed of Trust authorizes Defendants to pay McDonald's insurance premium and open an escrow account. Def.'s App. 9, ¶ 3. Defendants argue, and in fact concede that they assume, that McDonald applied for a loan modification only because she had not "fulfilled her obligation to timely pay her mortgage." Defs.' Mot. 13-14. However, McDonald makes clear in both her Complaint and Response that when the escrow account was created, she hadn't missed a payment on her mortgage, property taxes or insurance. Pl.'s Resp. 21. McDonald alleges that Defendants opened the escrow account without her permission, and as a result of this action, her monthly payments increased. Without any indication that McDonald had failed to pay her mortgage, or had not paid her insurance premium directly, the Court finds that McDonald has set forth allegations sufficient to state a plausible claim that Defendants breached the contract when they created an escrow account without her consent.

Therefore, accepting her allegations as true, the Court finds that McDonald has stated a plausible claim for breach of contract on the theory that Defendants were not authorized to pay her insurance premium and open an escrow account. Accordingly, the Court finds that Defendants' Motion, with respect to the claim for breach of contract, is **DENIED**.

B.   *Texas Debt Collection Practices Act*

McDonald alleges that Defendants violated the Texas Debt Collection Practices Act ("TDCPA"), including sections 392.301, 392.303, and 392.304, by using "deceptive means" to collect the debt and by wrongfully foreclosing on the Property. Pl.'s Resp. 22. Defendants move for dismissal on the grounds that claims under the TDCPA are preempted by the National Bank Act[3]

---

[3] Defendants cite to *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 12 (2007), in support of the proposition that "when state prescriptions significantly impair [a national bank's] exercise of authority . . .

and that Defendants merely acted to protect their contractual right to foreclose.

    i.    <u>Subsection 392.301</u>

Under the TDCPA, a debt collector is prohibited from using threats, coercion, or attempts to coerce, including "threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8) (West 2006). A "threat" is defined as "a communicated intent to inflict harm or loss on another or another's property." BLACK'S LAW DICTIONARY 1618 (9th ed. 2009). "Coercion" is defined as "compulsion by physical force or threat of physical force." *Id.* at 294. McDonald argues that Defendants were prohibited from foreclosing on the Property after wrongfully creating an escrow account. Pl.'s Resp. 24. As discussed *supra* Part III.A, the Court has denied Defendants' Motion to Dismiss with respect to McDonald's claim for breach of contract. Accordingly, the Court has not found, as a matter of law, that Defendants had the authority to initiate foreclosure proceedings. Defendants' Motion, with respect to subsection, is **DENIED**.

    ii.    <u>Subsection 392.303</u>

Subsection 392.303(a)(2) of the Texas Finance Code prohibits debt collectors from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the [debt] obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE § 392.303(a)(2). McDonald alleges that Defendants consistently misrepresented the amount she owed

---

under the [National Bank Act], the State's regulations must give way." However, Defendants have failed to substantiate this argument beyond a conclusory statement, nor have they cited to a single court that has found that the TDCPA is preempted by the National Bank Act. Given that Defendants must carry the burden of demonstrating that McDonald's claims must fail as a matter of law, the Court is not persuaded by the paucity of this particular argument.

on her mortgage loan, and when she complied with their requests to submit materials for loan modification, they raised her fees. Compl. ¶¶ 43-44. However, under the terms of the statute, a debt collector may charge additional fees if the parties have agreed to permit such charges under contract. Both the Note and the Deed of Trust expressly authorize the debt collector to charge additional fees and late charges. Defs. App. 2, 8-9. As the Court found *supra* Part III.A., Defendants did not waive their right to foreclose, and therefore they did not waive the right add charges to McDonald's debt. Plaintiff provides no evidence and no explanation regarding how the alleged unlawful charges violated the statute. Accordingly, Defendants' Motion for with respect to McDonald's claim for violation of § 392.303(a)(2) under the TDCPA is **GRANTED**.

  iii.  <u>Subsection 392.303</u>

Subsection 392.304(a)(8) of the TDCPA prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt . . . ." TEX. FIN. CODE § 392.304(a)(8). Subsection 392.304(a)(19) prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." TEX. FIN. CODE § 392.304(a)(19). McDonald argues that Defendants misled her to apply for a loan modification, wrongly opened an escrow account, and repeatedly told her that the Property would not be foreclosed. Pl.'s Resp. 25.

"For a statement to constitute a misrepresentation under the TDCPA, Defendants must have made a false or misleading assertion." *Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 632 (N.D. Tex. Dec. 29, 2010) (citing *Reynolds v. Sw. Bell. Tel., L.P.*, No. 2–05–356–CV, 2006 WL 1791606, at *7 (Tex. App.-Fort Worth June 29, 2006, pet. denied)). Here, McDonald has alleged a litany of misleading or false statements from Defendants. Notably, McDonald was told on several occasions

to pay her lower monthly mortgage fee of $721.35, and was misinformed about the outstanding amount that she owed. Defendants do not dispute these statements, and accepting McDonald's pleadings as true, she has alleged a plausible claim that Defendants misrepresented the character of her debt. Accordingly, Defendants' Motion with respect to McDonald's claims for violations of sections 392.304(a)(8) and(19) under the TDCPA is **DENIED**.

C.   *Unreasonable Collection Efforts*

Under Texas law, unreasonable collection is an intentional tort without clearly defined contours. *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.-Dallas 2008, no pet.). Generally, however, to establish a claim for unreasonable collection efforts, a plaintiff must demonstrate that a lender's conduct amounts to harassment that was "willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Id.* (citations omitted). "The reasonableness of conduct is judged on a case-by-case basis." *Kazmi v. BAC Home Loans Servicing, L.P.*, No. 4:11-CV-375, 2012 WL 629440, at *11 (E.D. Tex. Feb. 3, 2012).

McDonald argues that Defendants have "exceeded the bounds of reason" by failing to provide McDonald with the correct information regarding her loan modification and for continually telling her to pay her regular monthly payment. Pl.'s Resp. 28. Defendants argue, in turn, that they have merely exercised their right to foreclose and that their actions cannot be construed as a form of harassment. Though the Court is not persuaded that a series of phone calls may amount to harassment, McDonald's allegations that Defendants repeatedly misinformed her about the status of her loan modification, asked her to re-submit her loan materials, and misrepresented the amount she owed may amount to harassment that is "willful, wanton, [and] malicious." *See Singh v. JP Morgan Chase Bank, N.A.*, No. 4:11-CV-607, 2012 WL 669952, at *10 (E.D. Tex. Jan. 31, 2012).

Accordingly, McDonald has stated a plausible claim for this tort, and Defendants' Motion with regard to this cause of action is hereby **DENIED**.

D.      *Negligent Misrepresentation*

McDonald alleges that Defendants made repeated false representations regarding her mortgage account, which amounts to negligent misrepresentation. Compl. ¶¶ 49-51. A claimant alleging negligent misrepresentation must show the following: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

However, a tort claim for negligent misrepresentation may be limited the economic loss rule. Under Texas law, the economic loss rule precludes recovery in tort where a plaintiff's injury is an economic loss arising from a contract dispute. *Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.*, 260 S.W.3d 529, 541 (Tex. App.-Tyler 2008, pet. denied). That is, where the only injury alleged is economic loss that is the subject of a contract, the economic loss rule eliminates a tort remedy, even if the injury is the result of a contracting party's negligence. *Kazmi*, 2012 WL 629440, at *14. "Thus, in order for a tort duty to arise out of a contractual duty, i.e., negligent failure to perform a contract, the liability must arise independent of the fact that a contract exists between the parties; the defendant must breach a duty imposed by law rather than by the contract." *Id.* (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991)).

Though Defendants argue that McDonald's injuries arise solely from the Deed of Trust,

McDonald alleges that she has experienced mental anguish and psychic trauma as a result of the alleged misrepresentations. While McDonald's complaint that her credit rating has declined is an economic loss arising from her contractual relationship with Defendants, *see Sanghera*, 2012 WL 555155, at *6, she may recover damages that are outside the scope of the Note and Deed of Trust. *See Hurd v. BAC Home Loans Servicing, LP*, No. 3:11–CV–1752–M, 2012 WL 1081994, at *12 (N.D. Tex. Mar. 12, 2012). Given that she seeks damages for her mental anguish and psychic trauma, which are beyond the economic loss caused by the contract, her claim is not barred by the economic loss rule. Accordingly, Defendants' Motion with respect to this claim is **DENIED**.

E.      *Remedies*

McDonald pleads three separate claims that are more properly considered remedies than causes of action. First, McDonald argues that she is entitled to exemplary damages because Defendants' conduct was so unreasonable as to amount to malice. Compl. ¶¶ 37-38. "Exemplary damages are authorized under the Texas Civil Practice and Remedy Code when the claimant proves by clear and convincing evidence that the harm [with respect to which the claimant seeks recovery] results from fraud, malice or gross negligence." *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 735 (N.D. Tex. 2011) (quoting *Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370, 373 (Tex. 2004)). Exemplary damages are not available where a plaintiff seeks to recover damages exclusively for a breach of contract. *Jim Walter Homes v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). However, McDonald's pleadings allege various damages that arise outside the scope of the Note and Deed of Trust, including negligent misrepresentation. Thus, McDonald does not seek a remedy exclusively for Defendants' alleged breach of contract. Given that malice or gross negligence may be inferred from either direct or indirect evidence, *Corporate Wings, Inc. v. King*, 767 S.W.2d 485,

487 (Tex. App.-Dallas 1989, no pet.), the Court cannot say, as a matter of law, that McDonald cannot establish a claim for exemplary damages.

Defendants also move to dismiss McDonald's claims for accounting and declaratory judgment. However, given that several of McDonald's underlying claims have been pleaded sufficiently to survive Defendants' Motion, there is no proper basis for dismissing these remedies at this time.

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**. Defendants' Motion is granted with respect to Plaintiff's claim under subsection 392.303 of the TDCPA. However, Defendants' Motion is denied with respect to Plaintiff's claims for breach of contract and anticipatory breach of contract, negligent misrepresentation, unreasonable collection efforts, violations of subsections 392. 301 and 392.304 of the TDCPA, and any request for remedies.

SO ORDERED.

SIGNED June 11, 2012

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE